IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 484-280-5006 | No. 24-MJ-526<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Benjamin Hallowell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number 484-280-5006 (the "TARGET CELLULAR DEVICE"), which is described in Attachment A.

2.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Philadelphia Field Division and have been employed by the FBI since February 2013. I have received specialized training from the FBI, including training in the investigation and identification of narcotics traffickers and violent gangs. During my tenure with the FBI, I have been assigned to the Safe Streets Task Force of the FBI Anchorage Division and the High Intensity Drug Trafficking Area ("HIDTA")/Safe Streets Violent Drug Gang Task Force ("SSVDGTF") of the Philadelphia Division, which investigate, among other violations of federal law, violent drug gangs and

criminal organizations including those involved in the importation, distribution and manufacturing of controlled substances, Hobbs Act violations, and homicides and shootings resulting from the drug trade.  As an agent, I have investigated numerous firearms violations, drug violations, Hobbs Act violations, and other related crimes.  I have conducted physical and electronic surveillance, debriefed confidential sources, analyzed information obtained from court-authorized search warrants, and participated in the drafting and execution of search warrants involving these matters.  I know that drug traffickers utilize communication devices to facilitate and further their drug trafficking activities by using them to arrange meetings, discuss transactions, and to communicate about drug trafficking activities and operations.  Prior to working with the FBI, I was a Geospatial Intelligence Analyst with the National Geospatial-Intelligence Agency (NGA) from 2006 to 2013.  My work with them included two deployments to Iraq and two deployments to Afghanistan where I was embedded with intelligence units of the military and other government agencies which supported both strategic and tactical military operations and intelligence operations.  A significant part of my work consisted of geo-locating phones and locating targets associated with those phones.  As part of my regular duties, I have worked several investigations that have involved the analysis of both current and historical cellular telephone data/records.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. One purpose of applying for this warrant is to determine with precision the TARGET CELLULAR DEVICE's location.  However, there is reason to believe the TARGET

CELLULAR DEVICE is currently located somewhere within the Eastern District of Pennsylvania and is currently being utilized by Moses Goodman ("GOODMAN") because GOODMAN is known to spend the significant time within this district, because GOODMAN has resided within this district for years, and because recent historical location information and prospective location information indicate that the TARGET CELLULALR DEVICE is within this district.  Pursuant to Rule 41(b)(2), law enforcement may locate the TARGET CELLULAR DEVICE outside the district provided the device is within the district when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Moses GOODMAN has violated Title 21, United States Code, Sections 841(a) and 841(b)(1)(C) (possession with intent to distribute methamphetamine).  Specifically, on February 21, 2024, GOODMAN was charged by Indictment in case number 24-CR-64 for the above crime in the Eastern District of Pennsylvania, and GOODMAN is the subject of an arrest warrant issued on February 21, 2024.  There is also probable cause to believe that the TARGET CELLULAR DEVICE's location will assist law enforcement in arresting GOODMAN, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41.  See 18 U.S.C. §§ 3121-3127.  This warrant therefore includes all the information required to be included in a pen register order.  See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended

to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. In or about the fall of 2021, law enforcement conducted an investigation into Moses GOODMAN. During the investigation, law enforcement conducted several recorded controlled purchases of controlled substances from GOODMAN. Some of these controlled purchases took place at or in the vicinity of GOODMAN's residence at the time at 754 Railroad Street, Catasauqua, Pennsylvania, 18032. On December 15, 2021, law enforcement executed a federal search warrant at GOODMAN's residence at 754 Railroad Street. Prior to executing the search warrant, law enforcement encountered GOODMAN on the street. During this interaction, GOODMAN was provided with his Miranda rights and then agreed to show law enforcement the location of controlled substances within his residence at 754 Railroad Street. GOODMAN and law enforcement returned to 754 Railroad Street, where GOODMAN showed law enforcement the location of various controlled substances. Laboratory testing confirmed that the presumed methamphetamine seized from GOODMAN's residence at 754 Railroad Street was, in fact, 143.239 grams (+/- 8.899 grams) of methamphetamine, a Schedule II controlled substance.

9. On February 26, 2022, Catasauqua Police Department ("CPD") were dispatched to 754 Railroad St, Catasauqua, PA, 18032 to respond to a domestic disturbance. Inside the residence, CPD encountered and spoke to GOODMAN and Ida Davis. Davis is known to be GOODMAN's domestic partner. GOODMAN and Davis spoke with police, and GOODMAN provided his phone number as 484-280-5006 (TARGET CELLULAR DEVICE).

10. On February 27, 2024, FBI served AT&T administrative subpoena number 943126 requesting subscriber information and historical call detail records (tolls) for TARGET CELLULAR DEVICE. That same day, AT&T returned the requested information. Records

showed that TARGET CELLULAR DEVICE was registered to Moses GOODMAN. Analysis of the returned records showed that from January 1, 2024 to February 27, 2024, the top contact – the most frequently contacted phone number – of TARGET CELLULAR DEVICE was 484-764-4274.

11. On March 1, 2024, FBI served T-Mobile administrative subpoena number 943889 requesting subscriber information for phone number 484-764-4274. That same day, T-Mobile returned the requested subscriber information, which showed that 484-764-4274 was registered to Ida Davis, GOODMAN's domestic partner. In my training and experience, it is common for the top contact of an actively used phone to be the phone user's domestic partner.

12. For the reasons listed above, including that TARGET CELLULAR DEVICE is listed as GOODMAN's phone in a police report, that TARGET CELLULAR DEVICE currently is registered to GOODMAN, and that the top contact of the TARGET CELLULAR DEVICE in early 2024 is the phone number registered to Ida Davis, believed to be GOODMAN's domestic partner, I believe the TARGET CELLULAR DEVICE currently is being utilized by GOODMAN.

13. On March 12, 2024, I applied for and was granted a search warrant which authorized AT&T to provide historical call detail records with location data and precise location data, as well as 30 days of prospective location information and 30 days of a pen register for TARGET CELLULAR DEVICE. Since obtaining this search warrant, I have received data from AT&T. I have reviewed this data on a regular basis in an attempt to identify GOODMAN's patterns of behavior and locations where he spends significant time, for the purpose of effectuating an arrest. To date, analysis of the TARGET CELLULAR DEVICE location data obtained via this search warrant has failed to identify a consistent "bed down" location (*i.e.*, the

location where GOODMAN sleeps at night) for GOODMAN.  Additionally, a recent publicly-available social media post by GOODMAN's domestic partner, indicated that they had just moved to a new house located within the Eastern District of Pennsylvania.  A Google reverse image search showed that the image GOODMAN's domestic partner posted was from the Zillow website and that it was associated with a real estate listing for 702 White Circle, Northampton, PA, 18067.

14.     On March 21, 2024, at approximately 4:30 PM, I conducted physical surveillance near 702 White Circle and observed a black Audi SUV bearing PA license plate LSL2219 parked in the driveway of 702 White Circle.  Database checks showed that the black Audi is registered to Moses GOODMAN.

15.     On March 25, 2024, I conducted physical surveillance on 702 White Circle.  Also at this time, ping data showed that the TARGET CELLULAR DEVICE was in the general area.  At approximately 6:21 AM, I observed the black Audi bearing PA license plate LSL2219 registered to GOODMAN near 702 White Circle.  Due to it still being dark, I was unable to see the driver of the vehicle.  However, after the black Audi departed the area, pings for the TARGET CELLULAR DEVICE showed that it had moved to a different area.

16.     Historical and prospective phone records of TARGET CELLULAR DEVICE and physical surveillance have shown that a cellular telephone and vehicle associated with GOODMAN have been located near or at 702 White Circle in recent days.  However, the late night and early morning pings do not always fall over 702 White Circle, but they typically are within a mile of that address.  Due to the imprecise nature of the data, and so that law enforcement can effectuate GOODMAN's arrest with minimum intrusion, a mobile cell site simulator is required to determine a more precise location of the TARGET CELLULAR

DEVICE before FBI can confidently establish pre-arrest surveillance on GOODMAN at the correct location.

17. Since the FBI has been unable to locate the TARGET CELLULAR DEVICE based simply on the historical and prospective information, I believe the authority to utilize a cell-site simulator ("CSS") will materially increase the chances of locating the GOODMAN.  If FBI is able to locate the TARGET CELLULAR DEVICE without the use of a CSS, the device will not be utilized.  Put another way, the FBI will use the least intrusive means necessary to locate the TARGET CELLULAR DEVICE and will employ a CSS only if other investigative techniques are not successful.

18. Lastly, as soon as GOODMAN has been located and arrested, the FBI will immediately discontinue the use of the requested prospective information and the authority to utilize a CSS on the TARGET CELLULAR DEVICE.

19. Based on my training and experience, and for all the reasons set forth herein, probable cause exists to believe that the investigative technique described in Attachment B will enable the FBI to locate and arrest the GOODMAN and is relevant to an ongoing investigation, as described above

## MANNER OF EXECUTION

20. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

21. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the TARGET CELLULAR DEVICE or receiving signals from cellular devices, including the TARGET CELLULAR DEVICE. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the TARGET CELLULAR DEVICE and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the TARGET CELLULAR DEVICE and use that information to determine the TARGET CELLULAR DEVICE's location, even if it is located inside a house, apartment, or other building.

22. The investigative device may interrupt cellular service of phones or other cellular devices within its range. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the TARGET CELLULAR DEVICE, the device may briefly exchange signals with all phones or other cellular devices in its range. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the TARGET CELLULAR DEVICE, and law enforcement will limit collection of information from devices other than the TARGET CELLULAR DEVICE. To the extent that any information from a cellular device other than the TARGET CELLULAR DEVICE is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the TARGET CELLULAR DEVICE from all other cellular devices.

**AUTHORIZATION REQUEST**

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

24. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELLULAR DEVICE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from arrest and prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELLULAR DEVICE outside of daytime hours.

26. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

          Respectfully submitted,

          /s/ *Benjamin Hallowell*
          BENJAMIN HALLOWELL
          SPECIAL AGENT
          FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on March 26, 2024.

/s/ PAMELA A. CARLOS
HON. PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 484-280-5006, whose wireless provider is AT&T, and whose listed subscriber is Moses GOODMAN (the "TARGET CELLULAR DEVICE").

## ATTACHMENT B

Pursuant to an investigation of Moses GOODMAN for a violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), this Warrant authorizes the officers to whom it is directed to determine the location of the TARGET CELLULAR DEVICE by collecting and examining:

1. radio signals emitted by the TARGET CELLULAR DEVICE for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the TARGET CELLULAR DEVICE in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).